FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 22, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

JAMES H.,[1]

             Plaintiff,

    vs.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[2]

             Defendant.

No. 4:19-cv-05087-MKD

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

ECF Nos. 13, 14

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned

identifies them by only their first names and the initial of their last names.  *See*

LCivR 5.2(c).

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration.

Accordingly, the Court substitutes Andrew M. Saul as the Defendant.  *See* Fed. R.

Civ. P. 25(d).

ORDER - 1

1    Before the Court are the parties' cross-motions for summary judgment.  ECF

2    Nos. 13, 14.  The parties consented to proceed before a magistrate judge.  ECF No.

3    5.  The Court, having reviewed the administrative record and the parties' briefing,

4    is fully informed.  For the reasons discussed below, the Court grants Plaintiff's

5    motion, ECF No. 13, and denies Defendant's motion, ECF No. 14.

## JURISDICTION

7    The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

9    A district court's review of a final decision of the Commissioner of Social

10    Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

11    limited; the Commissioner's decision will be disturbed "only if it is not supported

12    by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

13    1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

14    reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

15    (quotation and citation omitted).  Stated differently, substantial evidence equates to

16    "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

17    citation omitted).  In determining whether the standard has been satisfied, a

18    reviewing court must consider the entire record as a whole rather than searching

19    for supporting evidence in isolation.  *Id.*

20

ORDER - 2

1    In reviewing a denial of benefits, a district court may not substitute its

2    judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

3    1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

4    rational interpretation, [the court] must uphold the ALJ's findings if they are

5    supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674

6    F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

7    ALJ's decision on account of an error that is harmless."  *Id.*  An error is harmless

8    "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

9    *Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's

10   decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

11   *Sanders*, 556 U.S. 396, 409-10 (2009).

12                              **FIVE-STEP EVALUATION PROCESS**

13           A claimant must satisfy two conditions to be considered "disabled" within

14   the meaning of the Social Security Act.  First, the claimant must be "unable to

15   engage in any substantial gainful activity by reason of any medically determinable

16   physical or mental impairment which can be expected to result in death or which

17   has lasted or can be expected to last for a continuous period of not less than twelve

18   months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

19   "of such severity that he is not only unable to do his previous work[,] but cannot,

20   considering his age, education, and work experience, engage in any other kind of

ORDER - 3

substantial gainful work which exists in the national economy." 42 U.S.C. §

1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work

activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled. 20

C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two. At this step, the Commissioner considers the severity of the

claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from

"any impairment or combination of impairments which significantly limits [his or

her] physical or mental ability to do basic work activities," the analysis proceeds to

step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy

this severity threshold, however, the Commissioner must find that the claimant is

not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity. 20 C.F.R. §

416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the

1   enumerated impairments, the Commissioner must find the claimant disabled and

2   award benefits.  20 C.F.R. § 416.920(d).

3          If the severity of the claimant's impairment does not meet or exceed the

4   severity of the enumerated impairments, the Commissioner must pause to assess

5   the claimant's "residual functional capacity."  Residual functional capacity (RFC),

6   defined generally as the claimant's ability to perform physical and mental work

7   activities on a sustained basis despite his or her limitations, 20 C.F.R. §

8   416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

9          At step four, the Commissioner considers whether, in view of the claimant's

10  RFC, the claimant is capable of performing work that he or she has performed in

11  the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

12  capable of performing past relevant work, the Commissioner must find that the

13  claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

14  performing such work, the analysis proceeds to step five.

15         At step five, the Commissioner considers whether, in view of the claimant's

16  RFC, the claimant is capable of performing other work in the national economy.

17  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

18  must also consider vocational factors such as the claimant's age, education and

19  past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of

20  adjusting to other work, the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

"A finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits."  *Parra v. Astrue*, 481 F. 3d 742, 746 (9th Cir. 2007) (citing *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001)). When there is medical evidence of drug or alcohol addiction (DAA), the ALJ must determine whether the drug or alcohol addiction is a material factor contributing to the disability.  20 C.F.R. § 416.935(a).  In order to determine whether drug or alcohol addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. § 416.935(b)(2).  If the remaining limitations would not be disabling, drug or alcohol addiction is a

ORDER - 6

contributing factor material to the determination of disability.  *Id*.  If the remaining limitations would be disabling, the claimant is disabled independent of the drug or alcohol addiction and the addiction is not a contributing factor material to disability.  *Id*.  The claimant has the burden of showing that drug and alcohol addiction is not a contributing factor material to disability.  *Parra*, 481 F.3d at 748.

Social Security Ruling ("SSR") 13-2p provides guidance for evaluating whether a claimant's substance use is material to the disability determination.  SSR 13-2p, 2013 WL 621536, at *3.  It instructs adjudicators to "apply the appropriate sequential evaluation process twice.  First, apply the sequential process to show how the claimant is disabled.  Then, apply the sequential evaluation process a second time to document materiality[.]"  *Id*. at *6.

## ALJ'S FINDINGS

On December 11, 2015, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of January 1, 2015.  Tr. 84, 191-204.  The application was denied initially, and on reconsideration.  Tr. 87-90, 94-96.  Plaintiff appeared before an administrative law judge (ALJ) on February 2, 2018.  Tr. 33-60.  On March 27, 2018, the ALJ denied Plaintiff's claim.  Tr. 12-32.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since December 11, 2015.  Tr. 18.  At step two, the ALJ found that Plaintiff has the following severe impairments:

ORDER - 7

adjustment disorder with mixed disturbance of emotions and conduct; generalized

anxiety disorder; personality disorder with antisocial traits; and methamphetamine

dependence.  Tr. 18.  At step three, the ALJ found that Plaintiff's impairments,

including substance use, meet Listing 12.08 (personality and impulse-control

disorders) of 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 20.

The ALJ then reevaluated the sequential evaluation process parsing out the

effects of Plaintiff's substance use.  At the step two reevaluation, the ALJ found

that, if Plaintiff stopped the substance use, Plaintiff's only remaining severe

psychological impairment is personality disorder with antisocial traits.  Tr. 21.  At

the step three reevaluation, the ALJ concluded Plaintiff would not have an

impairment or combination of impairments that meets or medically equals one of

the listed impairments.  Tr. 21.  The ALJ then concluded that without the effect of

the use of substances, Plaintiff would have the RFC to perform work at all

exertional levels with the following nonexertional limitations:

> [he] has the ability to understand, remember or apply information that is
> simple and routine, as well as more detailed and complex.  Regarding
> interaction with others, [Plaintiff] would work best in an environment in
> proximity to, but not close cooperation with, coworkers and supervisors, and
> must work away from the general public.  Regarding the ability to
> concentrate, persist or maintain pace, [Plaintiff] has the ability, with legally
> required breaks, to focus attention on work activities and stay on task at a
> sustained rate; complete tasks in a timely manner; sustain an ordinary
> routine; regularly attend work; and work a full day without needing more
> than the allotted number or length of rest periods.  Regarding the ability to
> adapt or manage, [Plaintiff] has the ability to respond appropriately;

ORDER - 8

distinguish between acceptable and unacceptable work performance; and be aware of normal hazards and take appropriate precautions.

Tr. 22.

At step four, the ALJ found Plaintiff has no past relevant work. Tr. 25. At step five, the ALJ determined if Plaintiff stopped the substance use, there would be jobs that existed in significant numbers in the national economy that Plaintiff could perform including industrial cleaner; kitchen helper; and laundry worker II. Tr. 26. The ALJ then concluded that because substance abuse is a material contributing factor to the determination of disability, Plaintiff has not been disabled within the meaning of the Social Security Act at any time from the date of application through the date of the decision. Tr. 27.

On February 17, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff does not challenge the ALJ's findings at step three that, with the effects of substance use disorder, he met Listings 12.08. Plaintiff raises the following issues impacting the ALJ's determination as to whether Plaintiff would be disabled in absence of the substance use disorder:

ORDER - 9

1.  Whether the ALJ conducted a proper step-two analysis;

2.  Whether the ALJ properly evaluated the medical opinion evidence;

3.  Whether the ALJ conducted a proper step-three analysis;

4.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

5.  Whether the ALJ conducted a proper step-five analysis.

ECF No. 13 at 5.

## DISCUSSION

### A. Step Two

Plaintiff contends the ALJ "improperly rejected Plaintiff's impairments as groundless" at step two of the sequential evaluation process. ECF No. 13 at 15. First, Plaintiff contends the ALJ erred at step two by finding post-traumatic stress disorder (PTSD) and attention deficit hyperactivity disorder (ADHD) non-medically determinable impairments. Second, Plaintiff contends the ALJ erred in reevaluating step two as part of the DAA analysis by finding Plaintiff's only remaining severe mental impairment without the substance use disorder is personality disorder with antisocial traits and omitting PTSD, ADHD, generalized anxiety disorder, and adjustment disorder with depressed mood and anxiety. ECF No. 13 at 15 (citing the ALJ's DAA analysis at Tr. 21); ECF No. 15 at 7.

At step two of the sequential process, the ALJ must determine whether claimant suffers from a "severe" impairment, i.e., one that significantly limits her

ORDER - 10

physical or mental ability to do basic work activities.  20 C.F.R. § 416.920(c).  The

ALJ must first evaluate the claimant's "pertinent symptoms, signs, and laboratory

findings to determine whether [he or she has] a medically determinable

impairment."  20 C.F.R. § 416.920a.  A medically determinable impairment "must

result from anatomical, physiological, or psychological abnormalities that can be

shown by medically acceptable clinical or laboratory diagnostic techniques."  20

C.F.R. § 416.921.  Therefore, a physical or mental impairment must be established

by objective medical evidence from an acceptable medical source."  *Id.*  A

claimant's "statement of symptoms, a diagnosis, or a medical opinion" are not

enough to establish a medically determinable impairment.  *Id.*; *see also* SSR 96-4p.

An impairment may be found to be not severe when "medical evidence establishes

only a slight abnormality or a combination of slight abnormalities which would

have no more than a minimal effect on an individual's ability to work…."  SSR 85-

28 at *3.  Similarly, an impairment is not severe if it does not significantly limit a

claimant's physical or mental ability to do basic work activities; which include

walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

seeing, hearing, and speaking; understanding, carrying out and remembering

simple instructions; responding appropriately to supervision, coworkers and usual

ORDER - 11

work situations; and dealing with changes in a routine work setting.  20 C.F.R. § 416.922; SSR 85-28.[3]

When considering the severity of mental impairments, the ALJ considers the "degree of functional limitation resulting from [the claimant's] impairments" in four broad areas of functioning: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.  20 C.F.R. Part 404, Subpt. P, App. 1, at 12.00(C).  Functional limitation is measured as "none, mild, moderate, marked, and extreme."  20 C.F.R. § 416.920a(c)(4).  If limitation is found to be "none" or "mild," the impairment is generally considered to not be severe.

Step two is "a de minimus screening device [used] to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe

---

[3] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687

(9th Cir. 2005).

*1.  Non-Medically Determinable Mental Impairments*

Plaintiff argues the ALJ erred when she failed to conclude Plaintiff's PTSD

and ADHD as medically determinable and severe impairments.  ECF No. 13 at 15.

a. PTSD

Plaintiff attended a consultative examination with psychiatrist Kirsten

Nestler, M.D. in March 2016.  Tr. 335-38.  Dr. Nestler performed an interview,

mental status examination, gave her diagnostic impressions based on the DSM-5,

commented on Plaintiff's prognosis, and provided a functional assessment.  *Id*.  At

the time of the consultative examination, Plaintiff was 49 years old and had spent

approximately 23 years of his life since age 17 imprisoned and with minimal

mental health treatment.  Tr. 335.  Dr. Nestler diagnosed PTSD and adjustment

disorder with depressed mood and anxiety.  Tr. 337.  Plaintiff's mood was

described as "overwhelmed."  Tr. 337.  Dr. Nestler explained that Plaintiff

"seemed to describe symptoms consistent with PTSD based on his years of

incarceration and violence encountered and years of isolation" and though now "he

is clean from drugs" and "may be able to function better in the workplace," it is

"difficult to tell based on today's presentation alone."  Tr. 338.  Dr. Nestler opined

Plaintiff's PTSD "may" cause Plaintiff difficulty accepting instructions, interacting

ORDER - 13

with coworkers and the public, difficulty performing work activities on a consistent basis, maintaining regular attendance in the workplace, completing a normal workday/workweek without interruptions, dealing with the usual stress encountered in the workplace.  Tr. 338.

Although the ALJ acknowledged Dr. Nestler's diagnosis of PTSD and gave "significant weight" to Dr. Nestler's opinion, the ALJ concluded PTSD was not a medically determinable impairment.  The ALJ may not reject the diagnosis without setting forth specific and legitimate reasons for doing so.  *See Peng See v. Comm'r of Soc. Sec. Admin.*, 500 Fed. Appx. 676, 677 (9th Cir. 2010) (a treating opinion was implicitly rejected by the ALJ's failure to find that the claimant had a medically determinable mental impairment which had been found by the treating physician; accordingly the ALJ "implicitly and erroneously rejected those diagnoses without setting forth specific and legitimate reasons for doing so.").

First, the ALJ rejected the PTSD diagnosis of Dr. Nestler because it was made in the context of a disability evaluation.  Tr. 19.  The regulations require every medical opinion is to be evaluated, regardless of its source.  20 C.F.R. § 416.927(c); *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) ("the purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them.").  Furthermore, if the ALJ's logic was accepted, all the consultative

ORDER - 14

examinations performed for determining eligibility for Social Security benefits, such as that of Dr. Nestler in this case, would be considered suspect.

Second, the ALJ concluded there were no "longitudinal treatment records that would support the diagnosis." Tr. 19.  While a claimant's lack of treatment can be evidence of the lack of severity of a claimant's reported symptoms, it does not address the relevant inquiry as to whether the diagnosis was supported by "medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.921.

Third, the ALJ erroneously concluded "there are *no* objective medical signs or other findings that demonstrate the existence" of the condition.  Tr. 19 (emphasis added).  Dr. Nestler conducted a clinical interview and mental status examination of Plaintiff during the evaluation.  Tr. 335-37 (describing years of violence and solitary confinement, nightmares, flashbacks, hypervigilance, mood swings, family history of PTSD and violent upbringing, and overwhelmed mood.).  Dr. Nestler also made clinical findings concluding, for example, "the claimant may have difficulty completing a normal workday/workweek without interruptions and may have difficulty dealing with the usual stress encountered int the workplace due to his PTSD." Tr. 338.  The clinical interview and mental status examination are considered objective measures that can support the doctor's opinion.  *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

ORDER - 15

The ALJ relied upon the testimony of medical expert Jay Toews, Ed.D, whom the ALJ incorrectly claimed testified "that while there were some PTSD symptoms, these did not rise to the level of a diagnosis." Tr. 19. Contrary to the ALJ's finding, Dr Toews did not testify as to whether Plaintiff's symptoms rose to "a diagnosis" or a medically determinable impairment; he testified that there was insufficient information contained in Dr. Nestler's report to determine whether Plaintiff's impairment established the required level of severity to satisfy the requirements of Listing 12.15 (for "trauma- and stressor-related disorders"). Tr. 44-45 (stating that Dr. Nestler's report does not "indicate whether or not [Plaintiff] had the full complement of symptoms to meet the criteria," Tr. 44, and "by the record I did not see any evidence of – that he had the full complement of symptoms for 12.15" and "as I said 12.15 he did not meet criteria."). Accordingly, there is no support in the record for the ALJ's finding that "the reported symptoms do not meet the diagnostic criteria for PTSD" and it is error for an ALJ to substitute his own judgment for that of a medical professional. *Conger v. Astrue*, No. C11–653–RSM–BAT, 2012 WL 966074, at *5 (W.D. Wash. Jan. 12, 2012) (citing *Tackett*, 180 F.3d at 1102–03 and concluding the ALJ improperly rejected the PTSD diagnosis at step two because the physician's report did not detail all symptoms); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical

findings."). Moreover, the Court is unable to reconcile the ALJ's rejection of PTSD as non-medically determinable with the "significant weight" the ALJ assigned the functional limitations caused by PTSD which the characterized by the ALJ as "no more than mild *or moderate*." Tr. 24 (emphasis added).

Accordingly, the ALJ did not properly consider whether PTSD was a medically determinable impairment and the ALJ shall reconsider Dr. Nestler's diagnosis on remand.

### b. ADHD

Plaintiff was diagnosed twice during the relevant period with ADHD by Department of Social and Health Services examining psychologist N. K. Marks, Ph.D. Tr. 299, 386. In January 2015, Dr. Marks diagnosed ADHD, NOS (not otherwise specified) and stated that Plaintiff

> reports a long history of difficulties with focus, attention, sustained effort, distractibility and impulsivity. He has not received treatment for this and will likely continue to demonstrate those symptoms until he is medicated or has been taught self-management skills these will likely prevent him from being a productive worker, in that he will likely be a poor worker, show poor time manage, be distractible, make mistakes, and forget multistep tasks.

Tr. 299. In July 2017, Dr. Marks diagnosed unspecified ADHD stating "[t]his remains a huge problem." Tr. 386. Dr. Marks' mental status exam findings noted: "[h]e has a short attention span and isn't a very good listener." Tr. 428.

The ALJ acknowledged "the medical evidence of record in the relevant period contains two references" to ADHD but found the impairment was non-

ORDER - 17

medically determinable.  Tr. 19.  The first reason cited was because the Dr. Marks'

diagnoses were made "in the context of disability evaluations."  Tr. 19.  As set

forth above regarding the ALJ's rejection of Dr. Nestler's diagnosis for the same

reason, it is well-settled in the Ninth Circuit that the purpose for which medical

reports are obtained does not provide a legitimate basis for rejecting them.  *See*

*Lester*, 81 F.3d at 832.  An examining doctor's findings are entitled to no less

weight when the examination is procured by the claimant than when it is obtained

by the Commissioner.  *Id.*

    Second, the ALJ noted there are no treatment records in the current record to

support the diagnosis.  Tr. 19.  Again, while a claimant's lack of treatment can be

evidence of the lack of severity of a claimant's reported symptoms, it does not

address the relevant inquiry as to whether the diagnosis was supported by

"medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. §

416.921.

    Third, the ALJ relied upon a mischaracterization of Dr. Toews' testimony,

stating that he had testified "no psychological testing or assessment…

substantiate[s] the diagnosis."  Tr. 19.  However, Dr. Toews in fact testified: "I did

not find any evidence of ADHD in the record.  There are no psychological

assessments to merit that diagnosis."  Tr. 45.  Dr. Toews later clarified that there

were "no *psychometric* assessments" and "all of the diagnoses are based on self-

ORDER - 18

1  reports and clinical impressions of the examining psychologist and/or psychiatrist."

2  Tr. 46.  The ALJ's finding mischaracterizes the expert's testimony pertaining to

3  specialized testing measures and disregards the psychological assessments of Dr.

4  Marks, which included clinical interview and mental status examination findings in

5  July 2017 that Plaintiff was "distractible," "off task" and "struggled to maintain

6  focus." Tr. 389.  Contrary to the ALJ's further finding that "*no* objective medical

7  signs or other findings . . . demonstrate the existence" of ADHD, Tr. 19 (emphasis

8  added), these are considered objective measures.[4]  *Buck*, 869 F.3d at 1049 (finding

9  a clinical interview and mental status evaluation to be "objective measures" that

10  "cannot be discounted as a 'self-report.'").

11        Accordingly, the ALJ's stated reasons do not reasonably support the

12  conclusion that ADHD is not a medically determinable impairment.  The ALJ

13  should reconsider this diagnosis on remand.

14        *2.  Severe Impairments at DAA Step Two*

15        Applying step two as part of the ALJ's DAA analysis, the ALJ found

16  Plaintiff would continue to have limitations as a result of personality disorder with

17  _____

18  [4] The Court notes that Dr. Marks' evaluations indicate she reviewed two

19  psychological evaluations performed while Plaintiff was incarcerated in 2009

20  which also diagnosed Plaintiff with ADHD.  Tr. 297.

ORDER - 19

1  antisocial traits without the substance use disorder.  Tr. 21.  Plaintiff claims the

2  ALJ erred in omitting generalized anxiety disorder and adjustment disorder (with

3  depressed mood and anxiety) as additional severe mental impairments resulting in

4  more than minimal limitations in absence of the substance abuse disorder.[5]  ECF

5  No. 13 at 15.

6          a. SSR 13-2p

7          The regulations require in DAA cases that the ALJ evaluate which of the

8  claimant's current physical and mental limitations would remain if the claimant

9  stopped using drugs or alcohol, then determine whether any or all of the remaining

10  limitations would be disabling.  20 C.F.R. § 416.935(b)(2).  The ALJ thus repeats

11  steps two through five of the sequential evaluation process, this time eliminating

12  substance abuse from consideration.  In cases involving co-occurring mental

13  disorders, SSR 13-2p(7) states in part:

> a. Many people with DAA have co-occurring mental disorders; that is, a mental disorder(s) diagnosed by an acceptable medical source in addition to their DAA.  We do not know of any research data that we can use to predict reliably that any given claimant's co-occurring mental disorder would improve, or the extent to which it would improve, if the claimant were to stop using drugs or alcohol.
> b. To support a finding that DAA is material, we must have evidence in the case record that establishes that a claimant with a co-occurring mental

_____

[5] Defendant's response misconstrues Plaintiff's argument and discusses depression

instead of anxiety disorder and adjustment disorder.  ECF No. 14 at 15, 16-17.

ORDER - 20

disorder(s) would not be disabled in the absence of DAA.  Unlike cases involving physical impairments, we do not permit adjudicators to rely exclusively on medical expertise and the nature of a claimant's mental disorder.

SSR 13-2p, 2013 WL 621536, at *9.

While an ALJ may seek the assistance of medical experts, the ALJ may not "rely exclusively on medical expertise and the nature of a claimant's mental disorder" to support a finding of DAA materiality.  *Id.*; *see also Lester Z. v. Comm'r of Soc. Sec.*, No. 1:18-cv-3099- RMP, 2019 WL 7819479, at *6 (E.D. Wash. Apr. 22, 2019) (citing SSR 13-2p and noting "an ALJ may not rely exclusively on a medical expert's testimony and the nature of claimant's mental disorder to determine that drug and alcohol abuse is material."); *Hoban v. Comm'r of Soc. Sec.*, No. 3:15-cv-01786-HZ, 2016 WL 4059200,  *6 (D. Or. July 27, 2016) (SSR 13-2p "makes explicit that because medical science does not currently have a method for reliably predicting the improvement of a co-occurring mental disorder without substance abuse, the ALJ must rely on evidence in the case, and not exclusively on a medical expert, to ascertain the materiality of a claimant's DAA in the context of a co-occurring mental disorder.").  Furthermore, DAA is not material "if the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of DAA."  SSR 13-2p, 2013 WL 621536, at *9.  Also, "[i]f the evidence in the case record does not demonstrate the separate effects of

ORDER - 21

the treatment for DAA and for the co-occurring mental disorders," then the ALJ

should find that the DAA is not material.  *Id*. at *12.

SSR 13-2p directs, in pertinent part, that the ALJ consider periods of

abstinence from drug and alcohol use that are

> long enough to allow the acute effects of drug and alcohol use to abate.
> Especially in cases involving co-occurring mental disorders, the
> documentation of a period of abstinence should provide information about
> what, if any, medical findings and impairment-related limitations remained
> after the acute effects of drug and alcohol use abated.  Adjudicators may
> draw inferences from such information based on the length of the period(s),
> how recently the period(s) occurred, and whether the severity of the co-
> occurring impairment(s) increased after the period(s) of abstinence ended.
> To find that DAA is material, we must have evidence in the case record
> demonstrating that any remaining limitations were not disabling during the
> period.

SSR 13-2p at *12.

### b. ALJ's Reliance on Dr. Toews

Here, the ALJ relied exclusively on medical expert Jay Toews to find that

Plaintiff's only medically determinable psychiatric impairment without substance

use disorder was personality disorder with antisocial traits:

> As per the persuasive and well explained testimony of Dr. Toews, the only
> remaining severe mental impairment without the substance use disorder is
> the personality disorder with antisocial traits.  Dr. Toews testified that there
> is some evidence of anxiety in this record under 12.06 and problems
> adjusting to life outside of prison under 12.04, but there is insufficient
> information that the conditions would exist without substance use.

Tr. 21 (emphasis added).

ORDER - 22

1    The ALJ's exclusive reliance on Dr. Toews is inconsistent with the guidance

2   of SSR 13-2p.  *See Kindrick v. Comm'r of Soc. Sec.*, 1:16-cv-03195-FVS, 2018

3   WL 3026070, at *6 (E.D. Wash. Apr. 11, 2018) ("[T]he ALJ supported the DAA

4   analysis with substantial evidence from Plaintiff's lengthy period of sobriety,

5   including: objective medical evidence; Plaintiff's 'treatment course and daily

6   activities;' and Plaintiff's own testimony, including her ability to work full-time

7   with certain restrictions.").  Moreover, Dr. Toews' testimony does not reflect

8   assessment of periods of abstinence or consideration of the examining specialists'

9   opinions that Plaintiff's impairments were not primarily due to substance abuse.  It

10  is further evident from Dr. Toews' testimony he was either unable to review the

11  entirety of the record or was unprepared to testify as to all of the information in the

12  record related to Plaintiff's substance abuse.  Tr. 46-51 (informing Dr. Toews of

13  and directing him to Dr. Marks' second evaluation conducted in July 2017.  After

14  allowing time for review during the hearing, Dr. Toews acknowledged the

15  evaluation occurred during a period of abstinence).  Dr. Toews testified that

16  "medications for anxiety and depression" and "treatment would be helpful," Tr. 48,

17  however this general comment does not render Dr. Toews' opinion persuasive, nor

18  support the ALJ's determination that Plaintiff's anxiety and adjustment disorder

19  would not persist absent substance abuse.

20

ORDER - 23

1    In addition, the ALJ's finding that there was insufficient information to

2    conclude Plaintiff's co-occurring mental disorders of anxiety and adjustment

3    disorder would persist absent substance abuse is not supported by substantial

4    evidence in the record.  Every examining and nonexamining medical source

5    diagnosed or listed anxiety disorder as one of Plaintiff's primary severe

6    impairments.  Tr. 299 (Jan. 29, 2015 psychological evaluation by Dr. Marks noting

7    that with his anxiety "he is an extremely poor prospect for work" and "will become

8    avoidant and likely quit his job"); Tr. 337 (Mar. 12, 2016 consultative examination

9    by Dr. Nestler diagnosing "adjustment disorder with depressed mood and

10    anxiety"); Tr. 65 (Mar. 26, 2016 initial determination by Rita Flanagan, Ph.D.

11    listing anxiety disorders as Plaintiff's "primary" severe medically determinable

12    impairment); Tr. 76 (July 11, 2016 determination on reconsideration by Bruce

13    Eather, Ph.D. listing anxiety disorders as Plaintiff's primary severe impairment);

14    Tr. 385 (July 2017 evaluation by Dr. Marks noting Plaintiff's "extremely high

15    level of generalized anxiety" "remains unchanged"); Tr. 409 (July 14, 2017 review

16    of medical evidence by Janis Lewis, Ph.D. listing generalized anxiety disorder as

17    the "most severe" and primary diagnosis).

18

19

20

ORDER - 24

1    In addition, at least two additional psychological evaluations were conducted

2    prior to the alleged date of onset, which included diagnoses of anxiety disorder.[6]

3    *See* Tr. 314-17 (Mar. 5, 2012 psychological evaluation of Jan Kouzes, Ed.D.

4    diagnosing anxiety disorder NOS and antisocial personality disorder); Tr. 294

5    (June 10, 2010 consultative examination of Cecilia Cooper, Ph.D. during period

6    Plaintiff "appears to be making good effort to abstain from alcohol and illicit

7    drugs" and diagnosing "adjustment disorder with anxiety (lack of structure)," along

8    with antisocial personality disorder and bipolar II disorder, depressed).  Dr. Kouzes

9    indicates Plaintiff has a history of psychiatric hospitalization for anxiety at Airway

10

11    ─────────────

12    [6] Three additional psychological evaluations likewise diagnosing anxiety are

13    referenced in the record, but not included in the record.  Tr. 297 (describing Nov.

14    18, 2010 report by Tae-Im Moon diagnosing Plaintiff with anxiety disorder, NOS;

15    methamphetamine dependence in partial remission; cannabis abuse; and antisocial

16    personality disorder); Tr. 297 (describing Dec. 16, 2009 psychological report by

17    Lyn Smith, LMHC diagnosing generalized anxiety disorder; rule-out bipolar II

18    disorder; ADHD, NOS; amphetamine dependence in early remission; and rule-out

19    antisocial personality disorder); Tr. 297 (describing Feb. 20, 2009 diagnosis by

20    Lyn Smith, LMHC of generalized anxiety disorder and ADHD, NOS).

ORDER - 25

Heights, however, record contains no documentation of the hospitalization.  Tr. 315.

Limitations associated with an adjustment disorder were assessed on four separate occasions in psychological evaluations, which were conducted by Dr. Marks both in January 2015 and in July 2017, Dr. Nestler in March 2016, and Dr. Cooper in 2010.  Tr. 299, Tr. 385-87 (Dr. Marks' description of Plaintiff's adjustment disorder symptoms as his "difficult time adjusting to life outside of prison" as he has "few coping skills" and "doesn't know where to start with normal problem-solving skills"); Tr. 337, Tr. 294.

None of the above referenced medical evidence support the ALJ's finding that anxiety and adjustment disorders would not exist and would not be severe absent substance abuse, nor do they establish Plaintiff would not be disabled in the absence of DAA.  The ALJ's exclusive reliance upon the testimony of Dr. Toews to reach the DAA materiality finding was error.  Accordingly, for the reasons outlined above, substantial evidence in the record does not support the ALJ's determination regarding the materiality of Plaintiff's substance abuse.

c. Medical Opinion Evidence

Plaintiff contends that in performing the DAA materiality analysis and step two reevaluation of the severity of Plaintiff's co-occurring mental impairments, the

ALJ erred in weighing the medical opinions of related limitations assessed by Dr. Marks and Dr. Nestler.  ECF No. 13 at 8-13.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion.  *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2011) (internal quotation marks and brackets omitted).  "If a treating or

ORDER - 27

examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830–31). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews*, 53 F.3d at 1041.

### i. Dr. Marks

Dr. Marks examined Plaintiff in January 2015 diagnosing generalized anxiety disorder; ADHD NOS; amphetamine dependence in early remission in a controlled environment; cannabis abuse in early remission; adjustment disorder with mixed anxiety and depressed mood; acculturation problems secondary to release from prison; learning disorder NOS; and personality disorder NOS with antisocial features. Tr. 299. Dr. Marks noted Plaintiff had been released from jail, had a "tenuous living situation" with friends, and had a desire to move into the Oxford House, go through chemical dependency treatment, and "remain clean and sober." Tr. 298-99. Dr. Marks assessed severe limitations in five areas: the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; the ability to communicate and perform effectively in a work setting; the ability to complete a normal work day and work week without interruptions from psychologically based

ORDER - 28

symptoms; the ability to maintain appropriate behavior in a work setting; and the ability set realistic goals and plan independently.  Tr. 300.  Dr. Marks opined Plaintiff also had "marked" limitations in the abilities to: understand, remember, and persist in tasks followed by detailed instructions; perform routine tasks without special supervision; adapt to changes in a routine work setting; make simple work-related decisions; be aware of hazards and take appropriate precautions; and ask simple questions or request assistance.  Tr. 300.  She also opined that Plaintiff's impairments were *not* primarily the result of recent drug use and would persist following 60 days of sobriety and with treatment.  Tr. 300.

Dr. Marks evaluated Plaintiff a second time in July 2017, noting again that Plaintiff had just been released from jail and was "clean and sober."  Tr. 385.  She again diagnosed generalized anxiety disorder, ADHD, adjustment disorder, and antisocial personality disorder, as well as cannabis abuse and meth addiction both in remission.  Dr. Marks opined Plaintiff remained severely limited in four areas: the ability to be aware of hazards and take appropriate precautions; maintain appropriate behavior in a work setting; complete a normal workday and work week without interruptions from psychologically based symptoms; and set realistic goals and plan independently.  Tr. 386-87.  Dr. Marks assessed marked limitations in seven other basic work activities.  Tr. 386.  Dr. Marks found the impairments were

not the result of drug use within the past 60 days and would persist following 60 days of sobriety.  Tr. 387.

Though the ALJ agreed Dr. Marks' opinions "support disability with the substance use disorder," the ALJ assigned little weight to Dr. Marks' opinions regarding Plaintiff's functioning without the substance use disorder.  Tr. 25. Because these opinions were contradicted by the nonexamining opinions of Dr. Toews and Dr. Eather, Tr. 78-80, 39-51, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Marks' opinions.  *See Bayliss*, 427 F.3d at 1216.

The ALJ discounted Dr. Marks' opinions because "neither evaluation contains the mental status abnormality necessary to support" the opinions.  Tr. 25. Although the mental status examinations contain largely findings "within normal limits," Tr. 301, Dr. Marks' opinions are replete with detailed descriptions supporting the primary symptoms which are consistent with the problems Plaintiff faces in everyday life because of his impairments and difficulties coping with adjustment to life outside the structured environment of incarceration.  In January 2015, the clinical findings included that Plaintiff has an "extremely high level of anxiety," is "somewhat socially phobic," and has nervousness, poor focus, poor effort, poor concentration, a high level of avoidance, poor self-esteem, poor self-concept, depressed outlook, and difficulties with focus, distractibility and

impulsivity.  Tr. 299.  His mood was "very anxious" and "fearful of relapse" and his affect was "nervous and sad."  Tr. 301.  In July 2017, Dr. Marks noted Plaintiff: has "a short attention span" and "isn't a very good listener"; feels "hopeless about life"; has a depressed and anxious mood with an agitated affect; and concentration deficits not within normal limits, noting he was distractible, off-task and struggled to maintain focus.  Tr. 388-89.  Accordingly, substantial evidence does not support the ALJ's finding suggesting there are no "mental status abnormalities" which would support the assessed marked limitations in work capabilities.

The ALJ also gave little weight to Dr. Marks' opinions as to Plaintiff's functioning without substance use disorder because the ALJ concluded that Plaintiff had relapsed near the time of the evaluation.  Tr. 25.  Though the ALJ acknowledged Plaintiff experienced extended periods of sobriety followed by relapse, the ALJ found "the possibility of substance use is present" during Dr. Marks' evaluations.  Tr. 25.  The ALJ expressed a belief that Plaintiff was "likely in the midst of a relapse at the time of the second evaluation with Dr. Marks," because of his below normal concentration and the ALJ's own estimation of timing of a two-day relapse which Plaintiff vaguely testified occurred approximately six months prior to the hearing.  Tr. 25.  An ALJ may discount a medical opinion that does not consider a claimant's ongoing substance abuse.  *Cothrell v. Berryhill*, 742 Fed. App'x 232, 236 (9th Cir. July 18, 2018) (unpublished opinion); *Chavez v.*

1    *Colvin*, No. 3:14-cv-01178-JE, 2016 WL 8731796, at *8 (D. Or. July 25, 2016)

2    (unpublished opinion).  Although the ALJ is entitled to draw inferences logically

3    flowing from the evidence, here, it was unreasonable for the ALJ to discount Dr.

4    Marks' medical opinion based on the ALJ's belief Plaintiff was "likely in the midst

5    of a relapse" without an adequate factual basis for the conclusion.  The ALJ's

6    unreasonably relied upon Plaintiff's general statement to Dr. Marks that he has

7    typically relapsed when he was released from jail, Tr. 297, which does not suggest

8    Plaintiff was concealing his periodic relapses during the clinical interview.  The

9    ALJ also unreasonably interpreted Plaintiff's testimony that he "relapsed like six

10   months ago but only for a couple days," Tr. 41, to conclude the relapse occurred

11   during Dr. Marks' evaluation on July 13, 2017.  Indeed, Dr. Marks considered

12   Plaintiff's substance abuse and concluded that Plaintiff's impairments were not

13   primarily the result of drug use within the past 60 days and that the impairments

14   would persist following 60 days of sobriety.  Tr. 300, 387.  While the facts do

15   support the ALJ's conclusion that it is "difficult to determine if he was truly clean

16   and sober," Tr. 25, the rejection of Dr. Marks' opinion must be based on

17   substantial evidence and not mere intuition or conjecture of the ALJ.

18         The ALJ erred by discounting Dr. Marks' opinions on the grounds that the

19   psychologist did not consider Plaintiff's substance abuse, when in fact Dr. Marks'

20   made specific findings regarding Plaintiff's substance abuse and the ALJ's analysis

ORDER - 32

fails to consider these contrary findings. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (demanding that the ALJ set forth its reasoning in a way that allows for meaningful review); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1998).

Accordingly, the ALJ's rejection of Dr. Marks' opinion is not supported by substantial evidence.

### ii. Dr. Nestler

Plaintiff also claims the ALJ failed to properly consider the adjustment disorder diagnosed by Dr. Nestler in a consultative examination in March 2016 during a period of alleged sobriety. ECF No. 13 at 12-13. Dr. Nestler opined that the adjustment disorder "may" cause Plaintiff "difficulty" accepting instructions from supervisors, interacting with coworkers and the public, performing work on a consistent basis, maintaining regular attendance. Tr. 338. Dr. Nestler admitted it was "difficult to tell" whether Plaintiff may be able to better function in the workplace since he was "clean from drugs" based on his presentation at the examination. Tr. 338.

Because the ALJ's other step two and DAA analysis errors, including the rejection of Dr. Marks' opinions, alone warrant remand, the Court need not address this related claimed error. *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to

ORDER - 33

reach [plaintiff's] alternative ground for remand.").  However, the Court notes that consultative examinations play an important role in complex DAA cases where the medical evidence in the record is inconclusive as to the materiality of Plaintiff's DAA—especially for those who do not have an ongoing or extensive treatment relationship with a medical source, as is frequently the case with incarcerated and homeless claimants.  SSR 13-2P, 2013 WL 621536 (Feb. 20, 2013), at *11.  On remand, the ALJ should consider ordering a second consultative examination, possibly with a specialist in dual diagnoses of substance use disorders and co-occurring mental disorders.  *See Rocco v. Heckler*, 826 F.2d 1348 (3d Cir. 1987) ("often a diagnosis or prognosis is necessarily only an educated guess that must await later developments to confirm or disprove the doctor's original impression.").

### 3. Harmful Error

The ALJ failed to properly assess Plaintiff's medically determinable impairments and improperly credited the testimony of the medical expert over the examining and nonexamining sources, leading to error in the identification of Plaintiff's severe impairments in the absence of substance abuse.  Defendant contends the ALJ "resolved step two in Plaintiff's favor," "then included limitations stemming from [Plaintiff's] mental issues in the RFC," and thus did not commit prejudicial legal error.  ECF No. 14 at 17.

ORDER - 34

However, the ALJ's errors are not inconsequential in this DAA case.  *See Ingram v. Barnhart*, 72 Fed. App'x 631, *5 (9th Cir. 2003) (awarding benefits after finding substantial evidence did not support the ALJ's DAA materiality finding where the ALJ improperly credited the testifying medical expert over the examining physicians' opinions, leading to error in the identification of the claimant's severe impairments).  In DAA cases, "each and every impairment must be considered to determine if the combination of the remaining impairments is severe" and "if a severe impairment is omitted at step two, it is impossible to perform the proper analysis for differentiating the effects of DAA from the effects of a claimant's other impairments."  *Id.* at *3.  The ALJ's decision acknowledges that Dr. Marks' assessments of marked and severe limitations support a finding of disability.  Tr. 25.  As the ALJ did not properly assess Plaintiff's PTSD, ADHD, anxiety, or adjustment disorder, the Court cannot conclude that the ALJ accounted for all of Plaintiff's impairments and limitations during subsequent steps of the sequential evaluation process performed as part of the DAA materiality analysis.  *See Smolen*, 80 F.3d at 1290 ("having found [the plaintiff] to suffer from only one 'severe' impairment at step two, the ALJ necessarily failed to consider at step five how the combination of her other impairments ... affected her residual functional capacity to perform work"); *Hill*, 698 F.3d at 1161 (finding that because "the ALJ excluded panic disorder from [the claimant's] list of impairments and instead

ORDER - 35

characterized her diagnoses as anxiety alone, the residual functional capacity

determination was incomplete, flawed, and not supported by substantial evidence

in the record").

**B. Remaining Assertions of Error**

Plaintiff raises additional challenges to the ALJ's DAA analysis claiming: 1)

the ALJ failed to properly consider the DSHS Review of Medical Evidence forms

completed by nonexamining psychologists Faulder Colby, Ph.D. and Janis Lewis,

Ph.D.; 2) the ALJ failed to find Plaintiff disabled under Listing 12.04, 12.06,

12.08, 12.11, and 12.15; 3) the ALJ improperly rejected Plaintiff's symptom

claims; 4) the ALJ improperly assessed Plaintiff's RFC without substance use; and

5) the ALJ failed to conduct an adequate analysis at step five. ECF No. 13 at 13-

20. However, given the Court's conclusion that the ALJ's step two determinations

(both the initial determination of Plaintiff's medically determinable impairments

and on reevaluation of severity in connection with the DAA materiality analysis)

were not supported by substantial evidence, the Court declines to consider

Plaintiff's additional arguments.

**C. Remedy**

Plaintiff urges this Court to remand for an immediate award of benefits.

ECF No. 13 at 21.

"The decision whether to remand a case for additional evidence, or simply to

ORDER - 36

award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three credit-as-true conditions are met. *Garrison*, 759 F.3d 995, 1020 (9th Cir. 2014). Under the credit-as-true rule, the court may remand for an award of benefits if 1) the record has been fully developed and further administrative proceedings would serve no useful purpose; 2) the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and 3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, the Court finds that further development of the record and administrative proceedings will serve a useful purpose because the Court is unable

ORDER - 37

1    to meaningfully assess the ALJ's DAA analysis.  Remand is necessary to enable

2    the ALJ to consider all of the evidence of Plaintiff's psychological conditions and

3    the medical opinions suggesting Plaintiff's symptoms would exist regardless of

4    substance abuse.  Factual issues exist as to the nature of Plaintiff's substance abuse

5    and how it relates to his other psychological conditions.  *See* 20 C.F.R. § 416.935;

6    *Parra*, 481 F.3d at 748.  Therefore, remand for further proceedings, rather than an

7    award of benefits, is appropriate.  *See Treichler*, 775 F.3d at 1101 ("Where there is

8    conflicting evidence, and not all essential factual issues have been resolved, a

9    remand for an award of benefits is inappropriate.").

10          On remand, the ALJ is directed to conduct the sequential evaluation process

11    anew and reevaluate whether Plaintiff's DAA is a material factor contributing to

12    his disability.  Plaintiff should be afforded an opportunity to supplement the

13    medical evidence to address his contention that his mental impairments would exist

14    independent of any substance abuse.  If necessary, the ALJ should direct that

15    Plaintiff undergo a second consultative psychological examination, possibly with a

16    specialist in dual diagnoses of substance abuse disorders and co-occurring mental

17    disorders.

18

19

20

ORDER - 38

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED May 22, 2020.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 39